# Hirsh v. Anderson Hotel Company, Appellant.

*Bailment—Innkeeper—Loss of contents of trunk—Gratuitous bailee.*

1. Where a traveling salesman, in 1910, forwarded his trunk to a hotel twelve days before his arrival, requested the hotel, by mail, to take care of it, and the trunk was received and deposited in the baggage room, the location of which was known to the traveler, the hotel proprietor was merely a gratuitous bailee of the trunk, and was not liable, in the absence of proof of gross negligence, for the contents of the trunk, removed while the trunk was in the baggage room.

2. In such a case the relation of guest and innkeeper did not arise until the actual arrival of the owner of the trunk at the hotel.


Argued April 29, 1914. Appeal, No. 135, April T., 1914, by defendant, from judgment of C. P. No. 4, Allegheny Co., Third Term, 1911, No. 136, on verdict for plaintiff in case of Simon Hirsh v. Anderson Hotel Company. Before RICE, P. J., HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass to recover damages for the loss of the contents of a trunk. Before REID, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

[Upon receiving it, it was their duty as custodian or bailee without hire, and without compensation, to care for it in the same manner that any prudent person would care for similar property intrusted to them in the same way, and no higher duty is required in that connection than the care which the person thus intrusted would give to his own property; but it must be, however, the test of the ordinary and reasonable care that a reasonably prudent and cautious man would give to his own property. It does not do to say because some man, to whom property was intrusted, might allow his gold watch to lie out on the front porch, that

he might allow his neighbor's property to be exposed to the same extent.  It is the care that an ordinarily prudent man would give to property.] [2]

[The testimony of Mr. Morris, on cross-examination, is to the effect that in the other portions of the hotel from time to time, there had been stealing going on, pilfering, but that is only to enable you to determine whether or not there was reasonable care exercised under the circumstances.  This defendant company is not responsible for the theft of these goods unless they were negligent.  The question is whether they were negligent under the circumstances.  Negligence is the absence of care under the circumstances of a particular case. The circumstances of this particular case only required ordinary care.] [3]

[In reiteration of the principle involved or the facts here under discussion, the burden is on the plaintiff to prove negligence or want of ordinary care.  If you find there was ordinary care, then that is the end of this case; and if there was not ordinary care, and Mr. Hirsh sustained a loss, then the company is responsible.] [4]

[Mr. Prichard: The only thing I have to say is as to the measure of the liability.  Ordinary negligence as distinguished from the negligence of a warehouseman. I think they are only liable for gross negligence in the case of a gratuitous trust.

The Court: You think they are liable only for gross negligence?

Mr. Prichard: Yes, sir.

The Court: Well, I do not so understand the law.

Mr. Prichard: Under the circumstances in which these goods were received, I contend the slightest care under the law is sufficient, and that the absence of that care is the negligence for which the defendant would be liable, which is gross negligence.

The Court: Gentlemen, in this case the counsel has raised the question as to the liability of a gratuitous bailee, that the negligence for which he may be mulct

in damages, is gross negligence; that is, simply inexcusable, absolute negligence without any qualifications. I do not understand the law applicable to this particular case must be limited in that way. If you find that this defendant is guilty of gross negligence, there is no possible question about it that he would be liable, but if you find that duty which the defendant, as an innkeeper, acting as a gratuitous bailee, owed to this defendant, was not exercised, the measure of that being ordinary prudence, such as an ordinary man would use in regard to his own affairs, then the defendant would be liable. If that were used in that way, then there would not be negligence.] [5]

On a motion for a new trial REED, J., filed the following opinion:

This is an action of trespass to recover for the loss of clothing and articles of personal wear and use, alleged to have been taken from plaintiff's trunk whilst it was deposited in defendant's trunk room.

Defendant, as its name indicates, is an innkeeper in the city of Pittsburg.

Plaintiff, before October 2, 1910, had been in the habit of patronizing defendant's hotel as a guest, whenever his business, which was that of a traveling salesman, brought him to Pittsburg. He knew of the existence of the trunk room maintained by the defendant for the use of its patrons, and on former occasions had sent his trunk on in advance to be kept in that room pending his arrival. No charge was made by the hotel for this service, it being a matter of convenience for the accommodation of actual or prospective guests.

On October 2, 1910, plaintiff, intending to become a guest, sent his trunk to the hotel of defendant per Adams Express Co., to be kept there until his later arrival. He arrived and registered and actually became a guest on October 14, twelve days later. On sending for his trunk, and its being brought to his room, it was

opened and plaintiff found that practically everything of value had been removed by some one who, so plaintiff claims, rifled it during the time it was stored there.

Plaintiff's statement averred negligence in the care of the trunk, resulting in the loss, and, after a trial the jury found a verdict for him of $286.31.

Defendant moved for a new trial, and that motion is now before us for consideration.

The only reason urged by defendant's counsel upon the hearing of the motion was that the court erred in instructing the jury that the measure of duty which the defendant owed to plaintiff was ordinary care, and in declining to instruct them that, under the circumstances, defendant could only be held liable for gross negligence.

The case was tried by the court upon the assumption that the defendant was a gratuitous bailee, acting merely for the convenience of the prospective guest, and that a different rule should be applied, in consequence, to the, duty which defendant owed with regard to the trunk deposited with the bailee in advance of the guest's arrival.

If the court had been correct in this position, it would follow that it erred in its instructions, since there can be no doubt that the true rule as to the duty which a: gratuitous bailee owes is that he shall not be grossly negligent—in other words, only liable for loss due to such negligence.

The authorities cited by both plaintiff's and defendant's counsel, in their respective briefs on the rule for a new trial, have convinced us that the law as between innkeeper and guest might have been applied to the deposit of the trunk in question in this case. The past and prospective relationship of the parties must be considered. Plaintiff as a guest had the use of the accommodation of the trunk room; it was there for his use in the future. It was mutually advantageous to the parties. The advantage to the plaintiff was that his trunk should be stored and cared for by an innkeeper in whom he had confidence, pending his arrival, and the

re-establishment of his status as an actual guest—and the advantage to the innkeeper was, that he was assured of the profit incident to the patronage of the guest for whose anticipated coming he thus provided.

The case of Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297, supports this position. HENDERSON, J., at page 299, says:

"The provision for storage of trunks was convenient for the plaintiff, and was an incident of the business carried on by the defendant, and was presumably, to some extent, an inducement to a continued patronage of the hotel. When trunks were placed in the custody of the defendant in the room provided for that purpose, a bailment was created for mutual advantage. An unexplained loss of the property in the hands of the bailee gives rise to a presumption of negligence where such a bailment exists and the bailee is liable for his failure to exercise ordinary care."

The only limitation on the establishment of the relation of guest with the innkeeper to whom a trunk has been thus previously committed, seems to be that his arrival must not be unreasonably delayed. It cannot be said that it is an unreasonable delay to follow one's trunk twelve days after its arrival. In this case the relationship of guest was actually in good faith established, and under the authorities, it related back to the date of the arrival of the trunk.

The innkeeper under these circumstances, instead of being merely liable for ordinary care, became practically an insurer of the safety of the guest's property against theft or unwarranted interference: Shultz v. Wall, 134 Pa. 262.

The instructions given were, under the circumstances, much more favorable than defendant had a right to expect. The rule as to ordinary care only was stated and repeated by the court, thus fixing a measure of duty far below the standard which might have been required by the actual legal relationship of the parties.

392   HIRSH v. ANDERSON HOTEL CO., Appellant.

Opinion of Court below—Opinion of the Court.   [58 Pa. Superior Ct.

Instead of applying the severe rule of insurer, we laid down the liberal one that governs a bailee who is not merely a gratuitous one, namely, that of ordinary care. We have shown that the bailment was not gratuitous here, and we were therefore correct in thus presenting the law.   Had plaintiff not prevailed, he might well complain of the court's erroneous ruling, since he might have asked for the application of the more stringent rule above referred to; but under the circumstances the defendant has no grounds for complaint.

Verdict and judgment for plaintiff for $286.31.   Defendant appealed.

*Errors assigned* were (2–5) above instructions, quoting them.

*Donald Thompson,* with him *Blakeley & Calvert, C. B. Prichard* and *F. S. Delp,* for appellant.—To hold a person liable as hotel keeper for the loss of baggage at his hotel it must be shown, as held in Carter v. Hobbs, 12 Michigan, 52, not only that the baggage was lost in his hotel, but that he was acting in the capacity of a hotel keeper when the baggage was received into his care and that the owner was his guest: Tulane Hotel Co. v. Holohan, 112 Tenn. 214; Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297; Miller v. Peoples, 45 Am. Rep. 423; Merritt v. Lehigh Valley R. R. Co., 49 Pa. Superior Ct. 219.

*Joseph Stadtfeld,* for appellee.—So where the goods of an intending guest are sent to an inn and received by the innkeeper, the liability of the innkeeper begins from the moment the goods are received: Eden v. Drey, 75 Ill. App. 102; Maloney v. Bacon, 33 Mo. App. 501; Dickinson v. Winchester, 4 Cush. (Mass.) 114; Sassen v. Clark, 37 Ga. 242; Shultz v. Wall, 134 Pa. 262.

OPINION BY HEAD, J., October 12, 1914:

On October 2, 1910, the plaintiff, a traveling salesman, was a guest of the Metropole Hotel in Wellsville, Ohio.

Having determined he could more conveniently pursue his business in that section with less baggage than he had been carrying, he packed a considerable quantity of clothing and personal effects in a trunk and shipped it to Pittsburg. The trunk was consigned to himself in care of the defendant hotel company. The plaintiff testifies he then wrote and mailed a card to the defendant advising of the shipment of the trunk and asking that it be taken care of until his arrival. No intimation was given as to the date of the prospective arrival. Apparently that would be determined solely by the convenience of the plaintiff. There is evidence to show that on the day of the shipment, or the day following, the trunk, in apparent good order, was delivered to the defendant and placed in a trunk or baggage room, the location of which was known to the plaintiff.

Some twelve days later the plaintiff personally presented himself at the hotel, actually came infra hospitium, and was assigned a room. At his instance his trunk was at once brought up. He unlocked and opened it and found that nearly everything of value had been removed. The evidence was wholly silent as to when, where or by whom the theft of the goods had been effected, and in no way connected the defendant or any of its employees with the loss. Manifestly then the affirmative proof offered, in and of itself, established no liability on the part of the defendant, and the plaintiff's case must fail unless he can call to his aid some principle of law which, when applied to the facts stated, shifts the burden of proof and visits the defendant with responsibility for the unexplained loss of the plaintiff's goods.

The learned judge instructed the jury that on this state of facts the legal relation between the parties was that of bailor and bailee without reward. To this instruction the plaintiff made no objection whatever. Both court and counsel seem to have been then in accord as to the legal status of the parties under the evi-

dence.  But the learned judge further instructed the
jury that, as a result of the creation of the relation just
stated, the law imposed upon the bailee the exercise of
the same degree of care towards the property of the
plaintiff as a man of reasonable and ordinary prudence
would bestow upon his own property.  He then left to
the jury as the single question—apart from fixing the
value of the property—to be determined by them
whether or not that measure of care had been exercised.
That the learned judge fell into error in this statement
of the measure of the responsibility of the defendant as
a gratuitous bailee there can be no doubt: Tompkins v.
Saltmarsh, 14 S. & R. 274; Scott v. Bank of Chester
Valley, 72 Pa. 471; Bank of Allentown v. Rex, 89 Pa.
308; Hofford v. R. R. Co., 43 Pa. Superior Ct. 303.

In the opinion discharging the defendant's rule for a
new trial, the learned judge concedes that the instruc-
tions we have referred to were erroneous.  He, however,
reached the conclusion that under the evidence he should
have instructed the jury the true relation existing be-
tween the parties was that of innkeeper and guest and
that such relation, notwithstanding the time of the
plaintiff's arrival at the hotel, was carried back by the
law itself to the date when his trunk was received.  The
reasoning which led the mind of the learned judge to
the conclusion stated may be fairly indicated by the
following excerpt from his opinion: "The only limitation
on the establishment of the relation of guest with the
innkeeper to whom a trunk has been thus previously
committed seems to be that his arrival must not be un-
reasonably delayed.  It cannot be said that it is an un-
reasonable delay to follow one's trunk twelve days after
its arrival.  In this case the relationship of guest was
actually in good faith established and under the au-
thorities it related back to the date of the arrival of
the trunk."

Whatever might be said of the true state of the law
as to the extent of the responsibility of an innkeeper

for the property of his guest prior to the decision in Schultz v. Wall, 134 Pa. 262, it must now be agreed the measure of the innkeeper's liability has been placed beyond the region of debate. But it ought to be clear enough that the relation, to which the law attaches an obligation so onerous on the innkeeper, is and must be a mutual one. There is no foundation upon which such relation can rest until there be both innkeeper and guest. The lexicographers define the word "guest," when used in the sense to which we are now referring, as a lodger or boarder at a hotel, lodging house, or boarding house. The very term implies the presence of a living person. It cannot with propriety be used to indicate personal or inanimate property. Clearly enough then the relation of innkeeper and guest between the present parties could not have been completely established until the arrival of the plaintiff at the defendant hotel. Had he never come, no such relation could have existed. But even legal principles which have come down to us through the centuries from the common law have sufficient elasticity to be fairly applied to the changing conditions of modern life. People are accustomed to travel nowadays with more baggage than in former times. When a stranger arrives in a city, with a considerable amount of baggage, intending in good faith to go as a guest to a certain hotel, he may find it practically impossible to prevent a temporary separation of himself and his property. The one may be compelled to go by one kind of conveyance to the hotel, the other by a different one. Necessarily, under such conditions, it would frequently occur that the arrival of the guest and his luggage at the hotel would not be absolutely contemporaneous. In such cases it may well be the law— without unduly stretching well-established principles, or destroying the sound reason on which they rest—might decline to take notice of an inconsiderable period of time between the happening of the two events which in good faith were intended to be actually contemporaneous.

In Flint v. Illinois Hotel Co., 149 Ill. App. 404, a traveler arrived at the railway station about 5:30 P. M. and delivered his baggage to the agent of a local transfer company, which in turn immediately delivered it to the head porter of the hotel, stating at the same time that the owner of the baggage would be there in a few minutes. The traveler actually arrived and registered at 6:15 of the same day. His baggage could not be found and he sued for its loss. In sustaining a judgment in his favor, the court in its opinion said: "The relation of innkeeper and guest may be and was in this case established by the reception of the baggage by the innkeeper. Where the baggage is delivered to the innkeeper as the baggage of an intended guest, who within a reasonable time thereafter actually becomes a guest, the responsibility of the innkeeper for the safe-keeping of the baggage relates back to the time when the baggage was delivered." When it is recalled that the plaintiff in the present case, by his own testimony as to the contents of the card he wrote to the defendant, discloses that he had neither intention nor expectation of arriving with his baggage, or at a time so closely approximate thereto that the two facts could, by any reasonable use of the term, be considered as contemporaneous, it appears to us clear that the Illinois case cited and a few others, of which it is the type, can furnish no sound foundation for the conclusion reached by the learned judge below. The reason for the liability of the innkeeper in Dickinson v. Winchester, 4 Cush. (Mass.) 114, where the innkeeper himself took charge of both guest and luggage at the railroad station, is even more clear. Certainly no authority for the conclusion we have been considering can be found in our own case of Hoyt v. Clinton Hotel Co., 35 Pa. Superior Ct. 297, where the plaintiff was actually and personally a guest of the hotel at the time of the loss of his property.

The wide responsibility of the innkeeper to his guest is like that of a common carrier to its passenger. In

the proper application of the legal rule, in cases belonging to the class last named, the courts have recognized that the relation may exist before the passenger actually enters the conveyance in which he is to be carried. It becomes necessary for him to purchase a ticket, to deliver his luggage to the proper agency for its transportation, to await the arrival of the expected train upon which he is to travel, etc. All of these acts, when done in good faith, are regarded as necessarily parts of the act of becoming a passenger, and so practically contemporaneous that minute divisions of time are not regarded. But it is also clear that even when such relation has been established, the passenger is not at liberty, for his own convenience, to withdraw himself from that relation while he seeks to continue to impose on the carrier its obligation regarding his property: Merritt v. Lehigh Valley R. R. Co., 49 Pa. Superior Ct. 219. We there held that when the plaintiff, for his own convenience, interrupted the relation of carrier and passenger, the obligation of the carrier could not be kept alive for his benefit, and that the defendant's responsibility, under the facts of that case, was that of a warehouseman.

If the law were as contended for by the appellee in this case, it would be quite possible for a person situate like the present plaintiff, by a judicious distribution of his baggage along the line of his prospective route, to become at the same time a guest in an indefinite number of hotels. The proprietor of each of these would become an insurer of the safety of the property committed to him, during a period of time when it was not intended the owner of the property should be under the obligations which rest upon a guest who enjoys the benefit of an innkeeper's responsibility. It is true that in Portland Ice Co. v. Connor, 32 Pa. Superior Ct. 428, we attempted to show that where a controversy turns on the question "what is reasonable time," such question is usually a mixed one of law and fact to be resolved by

a jury. But we there quoted with approval the following language from the case of Claus-Shear Co. v. Lee Hardware House, 140 N. C. 552: "The time however may be so short or so long that the court will declare it to be reasonable or unreasonable as a matter of law. If from the admitted facts the court can draw the conclusion as to whether the time is reasonable or unreasonable by applying to them a legal principle or a rule of law, then the question is one of law."

When we view the undisputed facts of this case in the light of the notice which the plaintiff sent to the defendant, we are of the opinion the evidence discloses no then present intention on the part of the plaintiff to become a guest at or about the time of the arrival of his baggage. His arrival twelve days later did not have the legal effect of carrying the relation then created back to the date of the receipt of the trunk. The defendant then was in fact and in law but a gratuitous bailee. There is no evidence in the case upon which a jury would be warranted in finding that it had been guilty of any gross negligence or breach of the duty imposed by that relationship. There is no legal foundation we can perceive, upon which the judgment appealed from may securely rest. The assignments of error must therefore be sustained.

Had the facts in this case occurred after the passage of the Act of June 12, 1913, P. L. 481, doubtless the action would never have been begun. This act is a considerable advance on the part of the legislature in the line of policy initiated by the Act of May 7, 1855, P. L. 479. A study of these acts points clearly to the conclusion the legislature has deemed it wise to mitigate, to some extent and under reasonable conditions, the stringent rule of the earlier law respecting the liability of innkeepers for the loss of property of their guests. The reasoning which in the present case leads us to the conclusion that the relation of innkeeper and guest was not established merely by the receipt of the plaintiff's trunk

under the circumstances appears to us to be in harmony
with the legislative idea, but the statutes referred to were
not intended to declare what would be sufficient to es-
tablish the existence of the relation. In strictness the act
of 1913 has no relevancy to the question we have dis-
posed of.

Judgment reversed.